### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN TECHAU, | ) | CASE NO. 5:20-cv-508 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Maureen Techau ("Plaintiff"), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I. Procedural History

On April 17, 2017, Plaintiff filed her application for SSI, alleging a disability onset date of March 1, 2017. (R. 10, Transcript ("Tr.") 136-141). The application was denied initially and

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 43-79). Plaintiff participated in the hearing on March 5, 2019, was represented by counsel, and testified. (Tr. 31-42). A vocational expert ("VE") also participated and testified. *Id*. On March 21, 2019, the ALJ found Plaintiff not disabled. (Tr. 25). On January 17, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 14 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in discrediting all of the medical opinions in the record and substituting his own unqualified opinion on medical matters beyond his expertise; (2) the ALJ erred in discrediting Plaintiff due to an improper evaluation of her activities of daily living and using an incorrect standard of disability; (3) the ALJ erred in finding Plaintiff did not meet or equal Listings 12.04 and 12.06; and (4) the ALJ failed to meet his Step Five burden. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[2]

1. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 1, 2017, a month before the alleged onset date of March 1, 2017, Dr. Chaturvedi completed a check-box form for the Department of Job and Family Services, noting that Plaintiff had been diagnosed with bipolar disorder and anxiety disorder. (Tr. 334). Dr. Chaturvedi stated Plaintiff needs support with activities of daily living (ADLs) and lives with her

---

[2]  The recitation of the evidence is not intended to be exhaustive. Treatment records are discussed, where relevant, in the court's analysis of the assignments of error.

parents. *Id*. Dr. Chaturvedi checked boxes indicating Plaintiff could *not* do the following: remember work locations/procedures; maintain attention or concentration; carry out instructions; perform activities within a schedule; interact with the general public; or even engage in part-time work. *Id*. Dr. Chaturvedi explained that Plaintiff had "difficulty with chronic mood disorder, bipolar and recent exacerbation, inability to focus and concentrate." *Id*.

On May 23, 2017, State Agency psychologist Robyn Murry-Hoffman, Ph. D., completed a mental RFC assessment finding that Plaintiff had no memory limitations, but was moderately limited in her ability to maintain attention and concentration for extended periods and moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 49-50). She explained that Plaintiff "[r]etains the ability to sustain attention, concentration, persistence and pace to perform routine tasks that do not have fast-paced performance or strict production quota requirements." (Tr. 50). In addition, Dr. Murry-Hoffman indicated Plaintiff had moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. *Id*. She explained that Plaintiff "[c]an get along with people in general on a superficial basis. Clt is often tearful at office visits. Clt reports taking showers ~ lx /week." *Id*. Finally, in the area of adaptation, Dr. Murry-Hoffman indicated Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 51). She explained that Plaintiff "[c]an carry out tasks in situations where duties are relatively static and changes can be explained. The claimant's ability to handle stress and pressure in the work place would be

reduced, but adequate to stresses of routine work that did not involve timed tasks or rate quotas." (Tr. 51).

On October 2, 2017, State Agency psychologist Robert Baker, Ph. D., completed a mental RFC assessment finding that Plaintiff had no memory limitations, but was moderately limited in the following areas: carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 62). He explained that Plaintiff "is able to concentrate sufficiently for the completion of 1-3 step tasks. She may need occasional flexibility with breaks when experiencing increased symptoms. Supervisors may need to provide occasional guidance." *Id*. In addition, Dr. Baker indicated Plaintiff was moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 63). He explained that Plaintiff "is often tearful at office visits. Clt reports taking showers - lx /week. She is able to work in a setting with limited interaction with the general public and with a small group that involves occasional and superficial interactions with others. Supervisors should provide supportive and constructive feedback She is able to work in a setting that does not require strict standards of neatness or cleanliness." (Tr. 63). Finally, in the area of adaptation, Dr. Baker indicated Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, explaining that Plaintiff "[c]an carry out tasks in situations where duties are relatively static and changes can be explained. She may need advance

notice of major changes, which should be gradually implemented allowing … time to adjust to them." *Id*.

On January 10, 2018, Dr. Chaturvedi completed a check-box Medical Source Assessment (Mental). (Tr. 321-323). She identified many mental restrictions, but found Plaintiff could understand, remember, and carry out simple instructions. (Tr. 321). However, Dr. Chaturvedi indicated Plaintiff was unable to make even simple work decisions, get along with coworkers, respond to changes, or use public transportation. (Tr. 322). She indicated Plaintiff would be off-task over 20 percent of the workday. *Id*. The only explanation given for the restrictions is that Plaintiff had a "long history of Bipolar Disorder with depressive features and anxiety that prevents meaningful employment." (Tr. 323).

On March 29, 2018, Dr. Chaturvedi again completed a check-box form for the Department of Job and Family Services, noting that Plaintiff had been diagnosed with bipolar II disorder. (Tr. 333). Dr. Chaturvedi checked boxes indicating Plaintiff could *not* do the following: remember work locations/procedures; maintain attention or concentration; perform activities within a schedule; and, interact with the general public. *Id*. Dr. Chaturvedi provided no explanation for the restrictions. *Id*. Plaintiff was released for training/GED. *Id*.

On December 4, 2018, Dr. Chaturvedi completed a check-box Medical Source Assessment (Mental). (Tr. 525-537). Dr. Chaturvedi again checked many boxes indicating significant mental limitations. *Id*. In the new statement, Dr. Chaturvedi found, among other limitations, that Plaintiff was unable to understand and remember detailed instructions, maintain concentration and concentration for an extended period of time, respond properly to supervisors or get along with coworkers, or respond appropriately to changes in the work setting. *Id*. She indicated Plaintiff would be off-task over 20 percent of the workday, and would need more than four

breaks per day. *Id*. Dr. Chaturvedi explained that Plaintiff "has a long history of chronic mental

illness" and a "long history of Bipolar II Disorder, Generalized Anxiety Disorder, need help from

family to function on day to day basis." (Tr. 526). Dr. Chaturvedi added that "due to the

chronicity of her mental illness, and the relapsing nature of her illness, patient finds it difficult to

hold down employment." (Tr. 527).

**B. Relevant Hearing Testimony**

At the March 5, 2019 hearing, Plaintiff testified as follows:

• She has never worked, not even part-time. (Tr. 34-35). She used to receive SSI when she was a minor. (Tr. 37). She has no income, and no longer receives alimony. (Tr. 37). She lives with her parents. (Tr. 35).

• She can drive a car. Her last completed grade was the ninth grade, and she has not obtained a GED. (Tr. 35).

• She is 5'6" tall and weighs 210 pounds. (Tr. 35).

• She suffers from depression. Some days she has a hard time getting out of bed. She has difficulty attending to her personal hygiene and is uncomfortable around strangers. She has a hard time maintaining eye contact, has "awful" concentration, memory issues, and loss of focus. (Tr. 35-36).

• She is constantly fatigued due to difficulty sleeping. Some nights, she does not sleep at all, and other times she sleeps too much. (Tr. 36).

• She has been prescribed medication for depression, anxiety, mania, and sleep issues. (Tr. 36). She stated that her medications variably impact her appetite, and cause drowsiness, fatigue, irritability, and loss of concentration. (Tr. 37).

• Her only physical impairment identified was a slight case of asthma. (Tr. 37).

• She suffers from panic attacks at least once a week. (Tr. 38).

• She often has thoughts of hurting herself, and cut herself a few weeks earlier. (Tr. 38).

• She takes naps nearly every day. (Tr. 38).

• She is supposed to help with chores around the house, but is unable to keep up with them.

(Tr. 38).

- She has seen Dr. Chaturvedi for eight years. (Tr. 39).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

7

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 29, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder, unspecified and generalized anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of unskilled work [catalogued by the Dictionary of Occupational Titles as specific vocational preparation factors one and two], undertaken in a work setting free of fast-paced production requirements or more than routine workplace changes, which setting requires no more than occasional and superficial [defined as precluding tasks involving arbitration, negotiation, confrontation, the direction of, persuasion of, or conferral of responsibility upon the claimant for the safety or welfare of, others] interaction with co-workers and the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on ***, 1987 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 29, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-25).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

   **1. Weight Accorded to Various Medical Opinions**

   In the first assignment of error, Plaintiff asserts the ALJ erred by discrediting all of the medical opinions in the record and "playing doctor." (R. 13, PageID# 645). Specifically, Plaintiff contends the ALJ erred by finding the State Agency opinions only partially persuasive, and by failing to properly analyze the opinions of Dr. Chaturvedi. *Id.* a PageID# 645-646. The Commissioner counters that an ALJ does not play doctor "merely because he did not fully adopt any of [the] opinions or prior administrative medical findings [and that such an argument] fails as a matter of law." (R. 14, PageID# 665).

   It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). To the contrary, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence … [and] has final responsibility for deciding an individual's RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013); *see also Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) ("An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the

rest of the evidence.'") (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir.

2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding

that an ALJ properly discounted the subjective evidence contained in a medical provider's

opinion because it too heavily relied on the patient's complaints).

Plaintiff's claim was filed on April 17, 2017. (Tr. 136). The Commissioner points out that

the "treating physician rule" was eliminated by a change in social security regulations that

applies to all claims filed after March 27, 2017. (R. 14, PageID# 666). Indeed, the regulations no

longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20

C.F.R. § 416.920c. Moreover, the change is not merely semantic, as the regulation explicitly

states that "[w]e will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative finding(s), including those from your

medical sources."[3] *Id*. As explained by the SSA, "[c]ourts reviewing claims under [the old] rules

… focused more on whether we sufficiently articulated the weight we gave treating source

opinions, rather than on whether substantial evidence supports our final decision…. [T]hese

courts, in reviewing final agency decisions, are reweighing evidence instead of applying the

substantial evidence standard of review, which is intended to be highly deferential standard to

us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017

WL 168819 (Jan. 18, 2017).

However, the new regulations are not devoid of any requirements as it relates to an ALJ's

---

[3] "Prior administrative findings" refers to the findings of the State Agency physicians or
psychologists. 20 C.F.R. § 416.913(a)(5) While the new regulations differentiate between
"medical opinions" and "prior administrative medical findings," the regulations do not ascribe
greater significance to either, and both and are evaluated utilizing the same factors. 20 C.F.R. §
416.920c(c).

duty to explain the weight assigned to medical opinions. An ALJ is required to articulate how he

or she considered the factors of "supportability" and "consistency," which are the two "most

important factors" in determining the persuasiveness of a medical source's medical opinion or a

prior administrative medical finding. 20 C.F.R. § 416.920c(b) & (c).[4]  With respect to the

opinions[5] of Dr. Chaturvedi, the ALJ found as follows:

> The claimant's psychiatrist, Anand Chaturvedi, M.D., offered four opinions of
> function. On January 10, 2018, he indicated that the claimant would have marked-
> to-extreme limitations in each of the four, psychologically based, work-related
> areas of function. He also indicated that the claimant would miss more than four
> days per month, be "off-task" more than twenty percent of the time, and require
> more than four breaks per workday, each lasting more than one hour. His opinion
> of December 4, 2018 was substantially identical to his opinion of January 10,
> 2018. On March 29, 2017, he indicated that the claimant would be unable to
> adhere to a schedule, interact with the public, maintain attention or concentration,
> or to employ her memory. On February 1, 2017, he indicated similar findings, but
> in addition, indicated that the claimant could not carry out instructions and that
> she would be unable to work. Dr. Chaturvedi has treated the claimant since prior
> to the inception of this claim, and is reporting within the bounds of his
> professional certifications and specialty. However, the opinion that the claimant
> would be unable to work is among those reserved exclusively to the
> Commissioner. His treatment record, as well as those of her counselor, indicates
> that the claimant attends as and where appointed faithfully, and is able to attend to
> her own treatment, often in increments of one hour, [in the case of her counselor]
> (3F), (7F), (9F), (13F). There is no objective support in the record for "off-task"
> behaviors, absenteeism, or the need for extra breaks.[6] The deficits of memory

---

[4] "The factors of supportability … and consistency … are the most important factors we consider
when we determine how persuasive we find a medical source's medical opinions or prior
administrative medical findings to be." 20 C.F.R. § 416.920c(b)(2). "We may, but are not
required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this
section, as appropriate, when we articulate how we consider medical opinions and prior
administrative medical findings in your case record." Id.
[5] Pursuant to 20 C.F.R. § 416.920c(b)(1), "when a medical source provides multiple medical
opinion(s) …, we will articulate how we considered the medical opinions … from that medical
source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of
this section, as appropriate. We are *not* required to articulate how we considered *each* medical
opinion … from one medical source individually." (emphasis added).
[6] Although the court need not decide the matter, the revised regulations, 20 C.F.R. §
416.913(a)(2)(i), define "medical opinions" as: "(A) Your ability to perform physical demands of
work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other

12

> and ability to interact with others suggested by Dr. Chaturvedi is not consistent with his own treatment notes. Despite presenting as fatigued, depressed, anxious and sometimes tearful, his notes reflect an intact memory, calm, cooperative, pleasant demeanor, with positive eye contact (1F/12), (2F/3), (SF/3, 9), (8F/4, 6, 11), (12F/4). These opinions are not consistent with, or supported by, Dr. Chaturvedi's own treatment notes, or with the overall evidence of record, described in digest form in the preceding paragraph. They are not persuasive.

(Tr. 23).

Plaintiff seizes on the ALJ's observation that Plaintiff can regularly attend medical appointments during his explanation concerning the persuasiveness, or lack thereof, of Dr. Chaturvedi's opinion. (R. 13, PageID# 646). However, this is only one of many reasons offered by the ALJ. Further, Plaintiff's conclusory statement that the ALJ failed to analyze the relevant factors under the regulations is belied by the actual decision. *Id.*

The ALJ determined that there was no objective support in the record for off-task behaviors, absenteeism, or the need for extra breaks. (Tr. 23). Plaintiff disagrees, and offers unexplained citations to the record that she believes support Dr. Chaturvedi's opinion. (R. 13, PageID# 647). First, it is not appropriate for the court to take an undeveloped or conclusory argument and then scour the record to develop an argument for Plaintiff or to bolster Plaintiff's skeletal argument.[7]  Plaintiff's unexplained string citations do not render the ALJ's decision

---

physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes." It is questionable whether a medical source's estimates concerning predicted absenteeism or the need for extra breaks is encompassed by this definition.

[7] *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *accord Meridia Prods. Liab. Litig. v. Abbott Labs.*,

deficient. Second, Plaintiff appears to misconstrue what the regulations mean by "supportability," which is defined as "[t]he more relevant the *objective medical evidence and supporting explanations **presented by** a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) (emphasis added). Dr. Chaturvedi's medical opinions themselves offer little by way of supporting explanations or objective medical evidence to support the limitations assessed.[8]  Plaintiff's citations to treatment records not actually cited or identified by the medical source does not render an opinion "supportable," as the regulations specifically look to a medical source's own presentation of objective evidence and/or supporting explanations rather than a claimant's *post hoc* presentation.

The ALJ also determined that Dr. Chaturvedi's opinions were not consistent with her own treatment notes or with the overall evidence of record. (Tr. 23). The ALJ's consistency determination is not merely a conclusory statement, as the ALJ notes Dr. Chaturvedi's own

447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). "This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on Plaintiff's behalf." Collins v. Comm'r of Soc. Sec., No. 1:18-cv-02271, 2019 U.S. Dist. LEXIS 93283, at *4 (N.D. Ohio Apr. 16, 2019) (citations omitted).

[8]  The Sixth Circuit Court of Appeals had observed that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." Hernandez v. Comm'r of Soc. Sec., 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)). The *Hernandez* decision explained that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" where the opinion in question was an unsupported check-box opinion. *Id.*; *accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under *Hernandez*); Toll v. Comm'r of Soc. Sec., No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).

mental status examinations routinely found Plaintiff to have intact memory, calm, cooperative, pleasant demeanor, with positive eye contact. *Id*. The ALJ supports his conclusion with citations to Dr. Chaturvedi's treatment notes. (Tr. 23). On March 16, 2017, just a month after opining Plaintiff could not maintain attention/concentration or remember work locations/procedures, Dr. Chaturvedi's mental status examination revealed Plaintiff, while fatigued, depressed, and going through a divorce, was "well-groomed and clean;" with behavior that was "cooperative, calm, pleasant, and eye contact;" speech that was "fluent, clear, and normal volume;" oriented x 4, "alert and memory intact;" "above average" intelligence; insight/judgment intact; and thought processes intact. (Tr. 259; Exh. 1F/12). The ALJ further cited to similar mental status examination results by Dr. Chaturvedi of Plaintiff in October and November of 2017, as well as in February, April, August, October, and December of 2018. (Tr. 23, *citing* Tr. 269, 324, 332, 428, 430, 435, 531; Exhs. 2F/3, 5F/3, 9, 8F/4, 6, 11, 12F/4).

The ALJ identifying inconsistencies between a medical source's proffered medical opinion and that same source's own treatment notes is not tantamount to "playing doctor." The regulations do *not* require a contrary "medical opinion" from another medical source before an ALJ may make a finding of "inconsistency." Instead, the regulations, when explaining what is meant by "consistency," explicitly instruct an ALJ to consider "*evidence* from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added). Medical evidence—for claims filed after March 27, 2017—includes both "objective medical evidence" as well as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). Plaintiff's position—that an ALJ plays doctor by considering a

medical source's own treatment notes, including statements concerning clinical findings or judgments about the severity of impairments—is simply inconsistent with the mandate of the regulations. The court finds no error in the ALJ's consideration of Dr. Chaturvedi's opinion.

Turning to the State Agency opinions, Plaintiff contends the ALJ pulled the RFC's functional limitations "out of thin air" because the ALJ found those opinions only partially persuasive. (R. 13, PageID# 645-647).

The ALJ addressed the State Agency opinions as follows:

> The state agency psychological consultant Robyn Hoffman, Ph.D., indicated that the claimant could perform routine tasks with no fast pace or strict production quotas, in a static setting where changes would be explained, and involving only superficial interaction with others. The state agency psychological consultant, Robert Baker, Ph.D., indicated that the claimant could perform one-to-three-step tasks, involving no public contact, only occasional and superficial interaction with others, and where major workplace changes would be explained in advance and implemented gradually. Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with chronic anxiety and depression, which must be expected to, and which the claimant has reported does, cause at least periodic deficits of focus and concentration. However, she is of, at worst, average intellectual function (3F/44), and is commonly reported to function at above average intellectual function, even when discernibly symptomatic of mood (1F/12), (SF/3). She is routinely described as exhibiting good concentration (3F/20), (7F/4, 60), (9F/5, 50), (13F/5, 29), and an intact thought process with intact memory function (1F/12), (SF/3), (8F/4), (12F/4), again, even when she is symptomatic of mood. In a setting where the claimant would be restricted to the performance of unskilled work, free of anxiety- or frustration-inducing production pressures, she appears to have retained sufficient, residual, cognitive function to serve as "backstop" against these periodic deficits of focus from becoming fatal to competitive work. I am not so sanguine that this would remain the case, were the claimant expected to carry out tasks of greater complexity. The claimant has reported difficulties being around others, and has exhibited difficulties maintaining eye contact throughout her counseling notes (3F/5), (9F/5). However, she socializes with friends approximately weekly (4E/5), was able to begin a new relationship after her divorce (7F/16), is demonstrably able to function in public settings, including in shopping centers ( 4E/4) and on bus trips (7F/60). She is consistently described within the treatment record, in pro-social terms (1F/12), (SF/3), (8F/4), (12F/4),

16

even when she is demonstrably symptomatic of mood. In a setting where both the frequency, and potential for any escalation of the intensity, of the interaction is tightly controlled, she appears to have sufficient, residual, social capacity to engage in competitive work. However, her ability to function in public settings is contrary to the wholesale preclusion of work that involves all public contact, and her difficulties maintaining eye contact suggests that both the frequency and intensity of her interaction needs be accommodated. The claimant has reported difficulties reacting to stressors and change. However, she is said to exhibit, at worst, fair insight and judgment (3F/40), (9F/26), while she typically exhibits intact insight and judgment, even though she is discernibly symptomatic of mood (1F/12), (SF/3), (8F/4), (12F/4). She has employed learned coping skills with sufficient proficiency to cope "okay" with events imposing both considerable change and stress, such as her divorce (1F/12). Her mental status has remained stable (1F/12) compare with (12F/4), despite stressors including the movement of her household (2A/4), the death of a family member (8F/4) and of a household pet (9F/13). In a setting where the claimant would be restricted to unskilled tasks to begin with, free of anxiety- or frustration-inducing production pressures, and where she would have cause to expect only routine changes within those parameters, she appears to have sufficient, residual, adaptive function to engage in competitive work. The stability of her emotional response to her divorce and movement of her household militates against any need for advanced warning or gradual implementation, and the restriction to only unskilled work militates against the need of changes to be explained. The opinion of Dr. Hoffman understates the claimant's cognitive and social limitations, and overstates her adaptive limitations. The opinion of Dr. Baker overstates the claimant's social capacity and understates her adaptive capacity. Nevertheless, *these opinions are broadly consistent with, and supported by, the overall evidence of record and are partially persuasive.*

(Tr. 22-23) (emphasis added).

Plaintiff's brief does not meaningfully argue that the ALJ failed to properly consider the State Agency opinions, referred to as prior administrative medical findings under the new regulatory framework. Instead, Plaintiff's brief primarily takes issue with the ALJ failing to adopt a single medical source opinion wholesale, and seeks to recast the ALJ's designation of the opinions as "partially persuasive" as tantamount to a rejection. (R. 13, PageID# 647). Indeed, Plaintiff's reply unambiguously asserts that the ALJ "played doctor" because, she believes, the RFC was "not consistent with any of the reviewing, examining, or treating opinions in the record

….." (R. 15, PageID# 685). Plaintiff, however, cites no authority for the proposition that an ALJ must essentially choose a single source's opinion and adopt it in its entirety.

The pertinent question, rather, is whether the ALJ's RFC finding has the support of substantial evidence in the record. Defendant's brief contains a chart that illustrates the RFC's non-exertional limitations were supported by the opinion of either Dr. Baker, Dr. Murry-Hoffman, or both. (R. 14, PageID# 668). The RFC limited Plaintiff as follows: (1) unskilled work (2) work setting free of fast-paced production requirements or more than routine workplace changes; (3) work setting requiring no more than occasional and superficial interaction with co-workers and the public. The Commissioner asserts that the first limitation is supported by Dr. Baker's finding that Plaintiff is "able to concentrate sufficiently for the completion of 1-3 step tasks …." (Tr. 62).[9] She further contends that the second limitation is supported by Dr. Murry-Hoffman's finding that Plaintiff retains "the ability sustain attention, concentration, persistence and pace to perform routine tasks that do not have fast-paced performance or strict production quota requirements," and that she retains the ability to "handle stress and pressure … of routine work that did not involve timed tasks or rate quotas." (Tr. 50-51). Finally, she asserts the third limitation is supported by both State Agency physicians' opinions that Plaintiff can "get along with people in general on a superficial basis," (Tr. 50) and "is able to work in a setting with limited interaction with the general public and with a small group that involves occasional and

---

[9] "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4 …." Social Security Ruling (SSR) No. 00-4p, 2000 WL 1898704 at *3 (Dec. 4, 2000). Thus, the RFC is slightly *more* restrictive than Dr. Baker's opinion. "Specific Vocational Preparation [SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). SVP 1 jobs require only a short demonstration, while SVP 2 jobs require up to and including 1 month to learn. *Id.*

superficial interactions with others." (Tr. 63). Plaintiff's reply brief is largely unresponsive to this argument. However, the Commissioner's argument thoroughly refutes Plaintiff's contention that the ALJ "pull[ed] functional limitations out of thin air." (Tr. 13, PageID# 647).

To the extent the ALJ did not credit every aspect of each State Agency opinion, it bears noting that the opinions of Dr. Baker and Dr. Murry-Hoffman are not identical, and the ALJ could not credit them both in their entirety. It is the responsibility of the ALJ to resolve conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC). "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389, 399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Here, the ALJ expressly set forth that he was crediting portions of each physician's assessment; and he adequately explained his reasoning by cataloging record evidence that supported his conclusions. Simply put, Plaintiff has not identified any shortcoming in the ALJ's explanation under the applicable regulations that would compel a remand.

## 2. Credibility Determination

In the second assignment of error, Plaintiff argues the ALJ erred by finding her testimony was not credible because she can perform activities of daily living. (R. 13, PageID# 647-648).

She notes that many decisions have held that an ability to perform minor daily activities is insufficient to establish the ability to engage in substantial gainful activity. *Id.*

"[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6ᵗʰ Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6ᵗʰ Cir. 1987)*.* An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6ᵗʰ Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6ᵗʰ Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6ᵗʰ Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6ᵗʰ Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017).[10] Rather, an ALJ's "decision must contain specific reasons for the weight given to the

---

[10] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an

individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied, because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 20).

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained

---

individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

in this decision." *Id.* When considering the intensity, persistence, and limiting effects of an

individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities;

(2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication an individual takes or has taken to alleviate pain or other symptoms; (5)

treatment, other than medication, an individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain

or other symptoms; and, (7) any other factors concerning an individual's functional limitations

and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-

7p).

The ALJ found as follows:

> In terms of the claimant's alleged psychological disorders, she was diagnosed
> with bipolar disorder, unspecified, and generalized anxiety disorder, each on
> March 22, 2016 (1F/2). While these findings would be consistent with the
> claimant's allegations of depression and anxiety, the record, when considered as a
> whole, is not supportive of the contention that the existence of these impairments
> would be preclusive of all types of work.
>
> The claimant has followed a regimen of formal counseling throughout the period
> relevant to this claim. Those records indicate that the claimant is learning,
> possesses and employs various coping skills in an effective manner (3F/8, 16),
> (7F/44). She is consistently reported to be making good progress towards her
> treatment goals (3F/3, 11, 39), (7F/3, 39, 60), (9F/4, 25, 49), (13F/4, 19, 28).
>
> The claimant has followed a stable regimen of psychotropic medications (1E/4),
> (9E/6), (12F/2), used with side effects including an increase in appetite (9E/6).
> The claimant has also reported drowsiness and fatigue (4E/8), (9E/6), but as these
> are attributed to various sleep aids and tranquilizers, these cannot be considered as
> side effects, but rather as the intended purpose of the medication.
>
> Mental status examinations included in the record have consistently reported
> either mildly adverse, or normal findings, including one dated March 16, 2017,
> which indicated that the claimant appeared fatigued and with a depressed, sad
> mood, but also with a congruent affect, as well groomed and clean, with

cooperative, pleasant, calm behavior and positive eye contact, no suicidal or homicidal ideation, no hallucinations, as fully oriented with intact memory function, above average intellectual function, intact insight, judgment and thought process and with unremarkable thought content (1F/12), one dated February 22, 2018, which indicated that the claimant presented as appearing fatigued, with a depressed and anxious mood, but with a mood congruent affect and also as well-groomed and clean, with cooperative, pleasant, calm behavior and positive eye contact, no suicidal or homicidal ideation, no hallucinations, as fully oriented with intact memory function, above average intellectual function, intact insight, judgment and thought process and with unremarkable thought content (5F/3), or one dated December 4, 2018, which indicated that the claimant presented with an apathetic mood and anxious, mood-congruent affect, as well groomed and clean, with cooperative, pleasant, calm behavior and positive eye contact, no suicidal or homicidal ideation, no hallucinations, as fully oriented with intact memory function, above average intellectual function, intact insight, judgment and thought process (12F/4).

In sum, the evidence would indicate that the symptom limitations relevant to these impairments are not as severe as alleged.

(Tr. 20-21).

The ALJ plainly discussed several of the seven factors set forth in SSR 16-3p throughout the decision, including Plaintiff's medications and treatment, and their impact as reflected in mental status examinations. The ALJ also appropriately discussed Plaintiff's daily activities, which is one of the seven factors. Although Plaintiff suggests ALJ made incorrect inferences based on Plaintiff's daily activities, the only evidence she cites in contrast is her own testimony, subjective statements Plaintiff made to treatment providers or in forms completed for the purpose of obtaining disability, and the statements of her family members. (R. 13, PageID# 649-651).

A plaintiff cannot prove that her subjective statements were credible or that an ALJ's credibility analysis was deficient simply by pointing to her own subjective statements—even when those statements are recorded in medical notes. Such circular reasoning is entirely unpersuasive and inconsistent with other decisions. Plaintiff's statements made to medical sources or hearing testimony are not *per se* credible, nor are a claimant's statements transformed

23

into "medical opinions" simply because a patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (concluding the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

Furthermore, it is not this Court's function to conduct a *de novo* credibility determination. Rather, this court reviews whether the ALJ actually performed a credibility evaluation, and whether said evaluation complied with applicable laws, rulings, and regulations. Plaintiff has not identified any error in the ALJ's application of SSR 16-3p by merely advocating for an alternative interpretation of the evidence. The second assignment of error, therefore, is not well

taken.

**3. Listings 12.04 and 12.06**

In the third assignment of error, Plaintiff contends the ALJ's conclusion that she did not meet or equal Listings 12.04 and 12.06 was incorrect, as, in her opinion, she clearly met the listing requirements. (R. 13, PageID# 652-653).

At the third step in the sequential evaluation, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy ***all*** of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 536 (6th Cir. 2002) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937, 2014 WL 4064078 (N.D. Ohio Aug. 15, 2014) (Knepp, M.J.); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012).

With respect to Listing 12.04 for depressive, bipolar and related disorders and Listing 12.06 for anxiety and obsessive-compulsive disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states in pertinent part:[11]

---

[11] The "B" and "C" criteria for both Listings is identical. The court omits the "A" criteria for both 12.04 and 12.06, as the Commissioner concedes that there is no dispute that Plaintiff's impairments satisfy the "A" criteria. (R. 14, PageID# 676, Footnote 7).

    B.     Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

          1.      Understand, remember, or apply information (see 12.00E1).

          2.      Interact with others (see 12.00E2).

          3.      Concentrate, persist, or maintain pace (see 12.00E3).

          4.      Adapt or manage oneself (see 12.00E4).

OR

    C.     Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

          1.      Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

          2.      Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

A reviewing court may "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937 at *22. The ALJ's decision contains a fairly exhaustive discussion of the evidence of record. (Tr. 18-24). Further, despite the lack of a heightened articulation standard in considering the listings, the decision thoroughly discussed each of the four areas of mental functioning identified by the listings, and the ALJ identified those portions of the record supporting his conclusion for each of the four areas. (Tr. 18-19).

Plaintiff's argument consists primarily of string citations to portions of the record that she believes could be interpreted as satisfying the B and C criteria, with little to no explanation as to

26

how those portions of the record render the ALJ's decision unsupported by substantial evidence. (R. 13, PageID# 653-654). Plaintiff is essentially asking the court to review the evidence of record and make its own *de novo* determination that the criteria of Listings 12.04 and/or 12.06 were satisfied.

First, a fully developed legal argument requires more than making bare conclusions accompanied by unexplained citations. Such briefing is the equivalent of asking the court to craft an argument on Plaintiff's behalf. Moreover, this court's role in considering a social security appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Plaintiff has not identified a dearth of evidence supporting the ALJ's conclusion that Listings 12.04 or 12.06 were not satisfied. Pointing to facts that Plaintiff construes as supporting the opposite conclusion is not enough. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("we must defer to an agency's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'"); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018) (same); *Ellison v. Colvin*, No. 3:14-CV-00710, 2015 WL 873293, at *3 (N.D. Ohio Feb. 27, 2015) ("simply because substantial evidence *could* have supported a more restrictive RFC does not provide a basis for remand, as it is immaterial whether there is evidence of record capable of supporting the opposite conclusion"); *Smith v. Astrue*, No. 1:12-CV-00831, 2012 WL 6607007, at *9 (N.D. Ohio Dec. 18, 2012) ("a claimant does not establish a

lack of substantial evidence by pointing to evidence of record that supports his position and contradicts the finding of the ALJ").

Furthermore, the ALJ's determination—that the B and C criteria of the identified Listings were not satisfied—is supported by substantial evidence in the form of the two State Agency psychologists' opinions. Dr. Murry-Hoffman expressly considered Listings 12.04 and 12.06, and concluded that the "B" criteria was not met as Plaintiff had no more than moderate limitations in each of the four areas. (Tr. 47-48). Dr. Murry-Hoffman further indicated that the evidence "does not establish the presence of 'C' criteria." (Tr. 48). Dr. Baker also considered these same listings, reaching the same conclusions as Dr. Murry-Hoffman concerning the "B" and "C" criteria. (Tr. 60-61). Although there may be cases where clear-cut evidence shows listing criteria was satisfied or that the ALJ failed to consider critical evidence capable of showing the criteria was satisfied, this is not such a case. Thus, Plaintiff's third assignment of error is without merit.

### 4. Step Five Determination

Plaintiff argues that the ALJ failed to meet his Step Five burden, because the hypothetical posed to the VE during the administrative hearing was not identical to the ultimate RFC finding contained in the decision. (R. 13, PageID# 654-655). The Commissioner argues that the ALJ reasonably relied on the VE's testimony because any variance between the RFC and the hypothetical posed actually operated in Plaintiff's favor. (R. 14, PageID# 678-679). Plaintiff's reply addresses the Commissioner's position only in a cursory manner. (R. 15, PageID# 690).

While the claimant bears the burden of proof during the first four steps, the burden shifts to the Commissioner at Step Five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At the fifth step, it is the Commissioner's burden to identify a significant number of jobs in the economy that accommodate the claimant's RFC. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d

469, 474 (6th Cir. 2003). "[I]f a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden…. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citations omitted). Nevertheless, while the burden "shifts to the Commissioner [at Step Five] to prove that work is available in the national economy that the claimant can perform with his proven RFC … ***[t]he claimant retains, however, the burden to prove his RFC even in step five.***" *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 538 (6th Cir. 2002) (emphasis added) (*citing Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)); *accord Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 917 (E.D. Mich. 2014) ("The claimant must provide evidence establishing her RFC."); *Mays v. Colvin*, No. 1:13cv191, 2013 WL 5797681 at *10 (N.D. Ohio Oct. 28, 2013) ("It is [claimant's] burden to demonstrate the severity and extent of his functional impairments.").

As stated *supra*, the ALJ determined Plaintiff's retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) "the claimant is limited to the performance of unskilled work [catalogued by the Dictionary of Occupational Titles as specific vocational preparation factors one and two];" (2) "a work setting free of fast-paced production requirements or more than routine workplace changes;" (3) "no more than occasional and superficial [defined as precluding tasks involving arbitration, negotiation, confrontation, the direction of, persuasion of, or conferral of responsibility upon the claimant for the safety or welfare of, others] interaction ***with co-workers and the public***." (Tr. 19-20) (emphasis added).

29

Plaintiff contends that the actual RFC adopted by the ALJ placed no limitation on her ability to interact with supervisors, while the hypothetical posed at the hearing was worded in a manner that could be construed as limiting interaction with supervisors to a superficial level. (R. 13, PageID# 654). At the hearing, the ALJ posed the following hypothetical to the VE:

> If you could assume an individual of the same age, education and work experience as the claimant. This individual would be able to work at all exertional level. The individual can perform unskilled SVP 1 to 2 work that is free of fast paced production requirements and involves only routine workplace changes. The individual would be able to have occasional public contact, occasionally do tasks with interactions with co-workers. And can have ***superficial contact with others***, meaning they can do no tasks involving arbitration, negotiation, confrontation, correcting work of others, persuading others or being responsible for the safety or welfare of others.

(Tr. 39) (emphasis added).

While Plaintiff is correct that her interpretation is possible, Plaintiff's conclusion that it is impossible to determine whether the jobs identified by the VE would remain for an individual as limited as described in the decision is simply illogical. The Commissioner correctly notes that "[a]ssuming (as plaintiff does, Br. at 23) that the [superficial contact with] 'others' in the VE hypothetical included supervisors, the VE testified that this extra restriction did not prevent plaintiff from doing the jobs that the ALJ relied upon." (R. 14, PageID# 678). The RFC contained in the decision expressly limits the character of the interaction between Plaintiff, co-workers, and the public, but not specifically supervisors. (Tr. 20). Therefore, to the extent the hypothetical at the hearing imposed an additional limitation of superficial contact with others—a limitation that could be interpreted as inclusive of supervisors—the VE, nevertheless, testified that such an individual was able to perform several jobs that number in the hundreds of thousands in the national economy. (Tr. 39-40). It is apparent that an individual with one *less* limitation could also perform those same jobs. Plaintiff's argument, therefore, is wholly without

merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 21, 2021